UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                                       :

PHILIP JOHNSON, pro se,                                                 :

                                                                  Plaintiff,             :                  **MEMORANDUM**
                                                                                          :                  **AND ORDER**
                  -against-                                     :
                                                                                          :                  02-CV-4497 (DLI)(LB)

QUEENS ADMINISTRATION FOR CHILDREN'S       :
SERVICES; THE COMMISSIONER OF SOCIAL         :
SERVICES OF N.Y.; MARC WILLIAMS, ACS           :
worker; MARION JOHNSON; SANDRA LEDYARD,   :
Supervisor ACS; THE CITY OF NEW YORK;             :
CORP. COUNCIL [sic] N.Y.,                                     :
                                                                                         :
                                                 Defendants.           :
                                                                                         :
------------------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

     Pro se plaintiff Philip Johnson filed the present action on August 12, 2002 under 42 U.S.C. §§ 1983, 1985, and 1986, alleging violations of his civil rights stemming from the emergency removal of his children on June 3, 2002. On August 23, 2002, U.S. District Judge Allyne R. Ross directed plaintiff to amend his complaint within sixty (60) days, naming the individuals he claimed deprived him of his rights, and specifying what each individual did or failed to do that violated plaintiff's constitutional rights. Plaintiff submitted an amended complaint on October 22, 2002. By Memorandum and Order dated February 5, 2003, U.S. District Judge Allyne R. Ross dismissed the amended complaint as to all defendants except New York City Administration for Children's Services ("ACS") and the City of New York ("City"). Judge Ross determined that the only issue remaining before the court is whether the plaintiff

"was afforded due process by the Administration for Children's Service and the City of New York when his children were removed in June 2002." (Defs.' Ex. B at 2.)

Defendants filed a motion for summary judgment, requesting dismissal of plaintiff's claims on grounds that he has not demonstrated any constitutional violation. Because plaintiff is a pro se litigant, the court, in deciding this motion, has construed plaintiff's papers broadly, interpreting them to raise the strongest arguments they suggest. *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002). For the reasons set forth below, defendants' summary judgment motion is granted in all respects.

**I.    Facts**

Plaintiff Philip Johnson is married to Marion Johnson and, at the time the events relevant to this action occurred, was living with her and their four children, Jazmon Shelborn, Ashley Johnson, Ethan Johnson, and Zalika Johnson. On June 3, 2002, ACS received a report from the New York State Child Abuse and Maltreatment Register alleging that plaintiff had been abusing or maltreating his children. This report was filed by plaintiff's wife.

Due to the allegations of abuse, Child Protective Specialist ("CPS") Marc Williams and another agent were sent to conduct a home visit at the Johnson residence. During the home visit, which was initiated late in the evening, CPS Williams spoke with plaintiff and plaintiff's wife. Each of plaintiff's children were interviewed individually either by CPS Williams or his assisting agent. Jazmon, plaintiff's then sixteen-year-old step-daughter, said during her interview that her father once "pushed her against the fridge and put a belt around her neck," which left a permanent scar on the right side of her neck. (Defs.' Ex. C at 401.) She also stated that she and her father fought the day of the home visit and he scratched her right hand while he

had her in a headlock. (*Id.*) Ashley, who was twelve years old at the time, complained that her father "hits her everyday with a wooden spoon that left cuts and bruises on the inside of her right arm" and also hits her mother. (*Id.* at 402.) During Zalika's interview, she did not say that she had been hurt by her father, but she did mention that her father had hit her brother and sisters. (*Id.* at 403.) The youngest child, Ethan, who was nine years old, said that his father had hit him that day and that his father would hit him with a belt if Ethan got an answer wrong during their home schooling lessons. (*Id.* at 404.)

After concluding the interviews, CPS Williams and the assisting agent left the Johnson residence. Approximately half an hour later, the two agents returned with the police to conduct an emergency removal of the children from the home pursuant to N.Y. Fam. Ct. Act § 1024. Plaintiff was directed by one of the officers to go to his bedroom and wait there. Plaintiff's wife, Marion Johnson, was downstairs while the children were being removed from the house. The children were placed overnight in the custody of ACS. Plaintiff testified at his deposition that, when Marion came up to the bedroom where he was waiting, he did not ask her what had transpired downstairs while the children were being removed.

The next morning, June 4, 2002, Marion told plaintiff "that she was going to go and find out what happened to [the children]." (Defs.' Ex. D., Johnson Dep. at 115.) Plaintiff did not ask her any questions and did not accompany her when she left. (*Id.* at 115–16.) That day, ACS filed neglect petitions in New York State Family Court, Queens County, before Family Court Judge Charles J. Heffernan. Marion attended this proceeding. Judge Heffernan granted Marion and the children a temporary ex-parte order of protection, until July 12, 2002, excluding plaintiff from the family residence.[1] (*See* Defs.' Ex. E at 3; Defs.' Ex. J.) The children were paroled to

---

[1] The original temporary order of protection was extended on April 13, 2002 until July 19, 2002 by Family Court Judge Robert F. Clark. Subsequently, on March 5, 2003, Judge Clark issued a one-

3

Marion's custody. On June 5, 2002, plaintiff was served with "a pink or orange piece of paper," which he understood to be an order of protection, and was told to leave his residence. (Defs.' Ex. D, Johnson Dep. at 123.)

Plaintiff made an application on June 7, 2002 for the return of the children under N.Y. Fam. Ct. Act § 1028. A proceeding was held that same day before Family Court Judge Robert F. Clark. During the proceeding, Judge Clark offered plaintiff court-appointed counsel. However, no counsel was available to be assigned to represent plaintiff that day. Therefore, plaintiff agreed that proceedings should be adjourned until June 10, 2002 so that he could be represented by counsel.

On June 10, 2002, plaintiff was represented at the Family Court proceedings by court-appointed counsel, Ann Lewis. By and through counsel, plaintiff acknowledged service of the family offense petitions. Judge Clark explained that he thought that the matter was not properly filed as a § 1028 action under the N.Y. Family Court Act since the children were not removed from the home, but rather the plaintiff was removed from the home. However, Judge Clark granted a hearing under N.Y. Fam. Ct. Act § 1027 to determine whether the order of protection was "appropriate or necessary to protect the children." (6/10/02 Tr. at 9.) Proceedings were then adjourned and a hearing was scheduled for June 13, 2002.

At the § 1027 hearing held on June 13, 2002 in Queens County Family Court, plaintiff testified. Plaintiff's counsel cross-examined CPS Williams. Judge Clark ruled that the order of protection was necessary and should be continued.

A trial was held in Queens County Family Court on August 30, 2002 before Judge Clark to determine whether the children had been neglected. Plaintiff appeared pro se, but he was still

---

year order of protection for Marion and the four children that expired on March 5, 2004. (Defs.' Ex. H at 11.) Plaintiff was present when this permanent order of protection was issued. (*Id.*)

4

afforded the opportunity to cross-examine witnesses. Judge Clark found that the children were "neglected" children, pursuant to N.Y. Fam. Ct. Act § 1012(f), and that plaintiff had shown "absolute failure to exercise a minimum degree of care in protecting the best interest of the[] children." (8/30/02 Tr. at 123–24.)

## II.  Discussion

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### B.  As an Agency of the City, ACS Cannot Be Sued

The claims against ACS must be dismissed for lack of jurisdiction. The capacity of ACS to be sued is governed by Rule 17(b) of the Federal Rules of Civil Procedure, which states that the issue is a question of state law. *Baker v. CNY Agency for Children Servs.*, No. 98 CV 5970,

1999 WL 260948, at *2 (E.D.N.Y. Apr. 21, 1999). In New York, it is well-settled that "[g]overnmental agencies have only those powers which are conferred expressly or by necessary implication; power is not to be inferred, and the principle of strict construction should be applied in interpreting statutory grants of power." *Yonkers Comm'n on Human Rights v. City of Yonkers*, 654 F. Supp 544, 551 (S.D.N.Y. 1987). Pursuant to Section 396 of the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." *Baker*, 1999 WL 260948, at *2. Hence, the action filed against ACS must be dismissed since the agency lacks the power to sue or be sued. *See id.*

### C. Plaintiff Has Not Demonstrated a Constitutional Violation[2]

Clearly, "parents have a fundamental, constitutionally protected liberty interest in the custody of their children." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citing *Stanley v. Illinois*, 405 U.S. 645, 651–52, 92 S. Ct. 1208, 1212–13, 31 L. Ed. 2d 551 (1972); *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977)). Because the right to have custody over one's children is a fundamental right, a "parent may not lawfully be deprived of the custody of his or her child without a hearing 'at a meaningful time and in a meaningful manner.'" *Id.* at

---

[2] To the extent plaintiff may be asserting claims regarding the adequacy of the Family Court proceedings conducted prior to filing in federal court, the court lacks subject matter jurisdiction. Under the *Rooker-Feldman* doctrine, a district court is barred from reviewing issues that have already been adjudicated in the state court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005). Also barred are issues raised in federal court that are "inextricably intertwined" with state court decisions, for example, where an appeal from a state court decision is pending, and the federal court is asked to decide the validity of that same state court opinion. *See, e.g.*, *Exxon Mobil* Corp. 125 S. Ct. At 1523 n.1; *Chase v. Czajka*, No. 04 Civ. 8228, 2005 WL 1123397, at *5–7 (S.D.N.Y. May 12, 2005). Although the parties have not informed the court of the current status of the Family Court proceedings, whether ongoing or final, the court lacks subject matter jurisdiction to address issues dealing with child custody, neglect, and visitation. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002).

520 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)). However, if there is "an objectively reasonable basis" for perceiving an imminent threat to the child's health or safety, the government may remove the child from parental custody and subsequently conduct an investigation. *See, e.g., Tenenbaum v. Williams*, 193 F.3d 581, 593–94 (2d Cir. 1999); *Gottlieb*, 84 F.3d at 518. In such emergency situations, in order to comply with due process, the state must allow the parent "an opportunity to be heard at a reasonably prompt time after the removal." *Gottlieb*, 84 F.3d at 518.

Further, "[i]n order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436–37, 85 L. Ed. 2d 791 (1985) (plurality opinion); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38, 56 L. Ed. 2d 611 (1978)). Inferring such a custom or policy from circumstantial evidence, for example by showing deliberate indifference regarding constitutional rights based on lack of employee training, is sufficient to meet the plaintiff's burden. *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Here, plaintiff contends that he was denied procedural due process because he was not given separate notice of his right to a hearing following the emergency removal of his children. Plaintiff further asserts that ACS has a custom of favoring women in making its custody decisions. Plaintiff has not introduced any facts that support these allegations. As defendants note, plaintiff failed to submit a statement of undisputed material facts, which is required under Local Rule 56.1. *See* E.D.N.Y. Local Rule 56.1(c) (stating that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless

7

controverted by the statement" of the non-moving party). While the court can construe plaintiff's statement of opposition to the motion for summary judgment as his statement of facts as required by Rule 56.1, the opposition does not controvert the assertions made by the City. Plaintiff has not included any affidavits or admissible evidence establishing that ACS did not give notice either to him or his wife the evening that their children were taken from the home. Instead, plaintiff merely asserts that the ACS caseworker is lying based on the fact that ACS paperwork noted the time the children were removed as 11:30 a.m. rather than p.m.

Even a pro se party is not exempt from the requirements of summary judgment motions. *Smith v. Planas*, 975 F. Supp. 303, 305 n.2 (S.D.N.Y. 1997). It is insufficient for plaintiff to try to defeat a motion for summary judgment by relying upon conclusory assertions since such allegations do not create a genuine issue of material fact. *See Delaware & Hudson Ry. Co. v. Consolidated Rail Co.*, 902 F.2d 174, 177–78 (2d Cir. 1990). Therefore, to the extent that plaintiff relies upon conclusory allegations, the court must view the facts as those stated by the City's Rule 56.1 statement and documentary evidence.

Based on the interviews CPS Williams conducted during his home visit of the Johnson residence—which revealed reports of the children being hit and injured by plaintiff repeatedly and on a regular basis—perceiving an imminent threat to the children requiring emergency removal was objectively reasonable. The record also shows that when plaintiff's children were removed from the home on June 3, 2002, CPS Williams gave plaintiff's wife, Marion Johnson, a "Notice of Temporary Removal of Children and Right to Hearing" (ACS Form W701B). (*See* Defs.' Ex. C at 404, 406, 410.) CPS Williams noted that Marion was advised that "until she has removed the father from the home[,] the children would remain in the custody of the Commissioner of Children's Services." (*Id*. at 404, 406–07.) Marion's attendance at the June 4, 2002 hearing is consistent with Williams' account. At this hearing, the day after the removal,

8

Marion informed the Family Court that she had signed a family offense petition. The Family Court ordered the return of the children to her custody and approved an order of protection to be entered against plaintiff pursuant to N.Y. Fam. Ct. Act § 1029.

While plaintiff testified at his deposition that he did not receive any paperwork when the children were removed, he also stated that it "may be true" that his wife was given these documents. (*See* Defs.' Ex. D at 113, 164.) Considering that plaintiff was married and living with his wife at the time the children were removed, ACS was not under an obligation to provide each parent with a separate copy of the notice at the time of the removal. *See Barrett v. Brooklyn Soc'y for the Prevention of Cruelty to Children, Inc.*, 504 N.Y.S.2d 682 (2d Dep't 1986) (where husband received statutorily-required notices as to emergency removal of children, court was "unprepared to hold that the defendants also owed a separate statutory duty to [the wife,] a nonrespondent custodial parent living in the same household"). Plaintiff does not contradict CPS Williams' account that notice was given to Marion Johnson other than by his conclusory allegation that Williams was lying, which is insufficient to create a genuine issue of fact that plaintiff's procedural due process rights were violated. Notice and hearing were provided, of which plaintiff failed to avail himself.

Moreover, even though plaintiff did not attend the proceedings held on June 4, 2002, wherein ACS filed a neglect petition for each of the children, he still was afforded due process by being given an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Rodriguez v. McLoughlin*, 214 F.3d 328, 335 (2d Cir. 2000) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965))). After plaintiff submitted an application for the return of his children under N.Y. Fam. Ct. Act § 1028, he appeared in court on June 7, 2002. The ACS attorney pointed out to Judge Clark at this conference that the children had already

been returned to their mother and that plaintiff had been excluded from the home. Plaintiff agreed to allow the proceedings to be adjourned because no court-appointed counsel was available to represent him at that conference. Plaintiff returned to court on June 10, 2002, represented by counsel, and Judge Clark noted that a § 1028 application was not appropriate since "[t]he children haven't been removed," but rather, it was plaintiff who had been removed. (6/10/02 Tr. at 8.) A hearing under N.Y. Fam. Ct. Act § 1027, to determine the appropriateness of the order of protection, was held on June 13, 2002. During this hearing, plaintiff was represented by counsel, who cross-examined witnesses upon his behalf, and plaintiff testified on his own behalf. A trial was held on August 30, 2002 in Queens County Family Court, on the issue of neglect, during which plaintiff appeared pro se.

Due process requires that the aggrieved parent receive an opportunity to be heard "a reasonably prompt time after the [emergency] removal" of his or her children. *Gottlieb,* 84 F.3d at 520. Even discounting the fact that the children were returned the day following the removal—and that plaintiff was excluded not because of the removal but because of the order of protection—plaintiff was given an opportunity to be heard. The hearing on June 7, 2002 occurred a "reasonably prompt time after the removal" on June 3, 2002. Accordingly, there has been no violation of his constitutional right to due process. *See, e.g.*, *Cecere v. City of New York*, 967 F.2d 826, 830 (2d Cir. 1992) (under emergency circumstances, up to four days' assertion of custodial authority by Office of Special Services for Children was "brief" and not in violation of due process).

Moreover, plaintiff's claim must fail because he has not established that the City had a policy, custom, or practice of violating due process subsequent to removal of children from the home. *See Gottlieb*, 84 F.3d at 518. Plaintiff has introduced no evidence to show that the City had such a policy in place. Since plaintiff has failed to meet his burden of establishing a genuine

10

issue of fact that there has been a violation of his constitutional rights and that the City had a policy, plan, or custom of impeding due process, plaintiff's claim must be dismissed.

### III. Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted in its entirety. The complaint is dismissed without costs to either party.

SO ORDERED.

DATED:   Brooklyn, New York
         January 31, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge